UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| EQT GATHERING, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 13-132-ART |
| | ) | |
| v. | ) | |
| | ) | |
| JEREMY WEBB, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs EQT Gathering, LLC ("EQT Gathering") and EQT Production Co. ("EQT Production") brought this diversity action against Jeremy and Miranda Webb, seeking various relief under state law for interference with the companies' natural gas pipeline. R. 1. The Webbs moved to dismiss, R. 11, challenging jurisdiction based on the amount in controversy, and alternatively attacking the complaint on the merits for failure to state a claim. Because neither challenge sticks, the Court will deny the Webbs' motion.

## BACKGROUND

The Webbs own the surface of the land surrounding the plaintiffs' pipeline. R. 1 ¶ 3. Some time ago, the prior owners of that land deeded various gas and mineral rights to EQT Production's predecessor. *Id.* ¶¶ 6–7. According to the handwritten deed (henceforth, "the Deed"), the grantee—and hence EQT Production—received rights to "all the coal, gas, salt water, oil, and minerals of every description in, upon, and under" the property, as well as "the full and complete rights and privileges of every kind for mining, manufacturing, and transporting such coal, gas, salt water, oil, and minerals on, through, and over the said

premises whether contained on the said premises or elsewhere and for any other purpose whatsoever." R. 1-1 at 1–2. This language, the plaintiffs say, gives them the right to construct and operate pipelines on the Webbs' land to transport their natural gas. R. 1 ¶ 8.

The plaintiffs allege the Webbs are violating that right in two ways: by maintaining a building atop the plaintiffs' pipeline that makes the line unsafe to operate, and by siphoning gas from that pipeline, without permission, for domestic use (or by authorizing others to do so). *Id.* ¶¶ 9–10, 13. Because the Webbs' building forced the plaintiffs to shut down their pipeline, the plaintiffs claim these violations have already caused them damages and threaten further harm to the tune of well over $75,000 due to service interruptions and potentially escaped gas. *Id.* ¶¶ 16, 20. The plaintiffs therefore seek: (1) an injunction permitting them to enter the Webbs' property to relocate the pipeline, (2) a declaration that they have the right to enter for that purpose, and (3) an injunction prohibiting the Webbs from unlawfully tapping their gas (or allowing others to do so). *Id.* at 5. The plaintiffs may also seek money damages. *Id.* at 4–5 (describing harm "in an amount to be proved at trial" and requesting "all other relief, *in law* or equity, to which they are entitled") (emphasis added). But they do not request a specific sum, and they admit the Webbs most likely could not satisfy an ensuing judgment. *Id.* ¶ 18.

The Webbs moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b) for lack of subject-matter jurisdiction (challenging the amount in controversy), and for failure to state a claim. R. 11. The Court now denies the Webbs' motion in its entirety.

## DISCUSSION

The Webbs muster various arguments, jurisdictional and otherwise, allegedly supporting dismissal in this case, but none of those arguments have merit. Indeed, contrary to the Webbs' assertions, the Court has jurisdiction, and the Webbs have failed to show that the plaintiffs are not entitled to the relief they seek.

## I. The Amount in Controversy Requirement Is Satisfied

The jurisdictional calculus in this case is inherently forward-looking, by the very nature of the prospective relief the plaintiffs seek. The Webbs' attempt to narrow the amount in controversy to merely past harm misses this crucial point. *See* R. 11-1 at 3–4; R. 16 at 3–4. In suits for declaratory or injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). That value is generally calculated "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) (internal quotation marks omitted).[1] The amount in controversy in declaratory judgment and injunction cases thus includes the plaintiff's potential future losses if relief is denied. *Hunt*, 432 U.S. at 348; *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 181 (1936) (valuing injunction by measuring "the loss . . . which would follow" from allegedly illegal conduct); *Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co.*, 239 U.S. 121, 126 (1915) (holding that the value of protection "now and in the future" determines the amount in controversy); *see also Freeland*

---

[1] Because the value to the plaintiffs of the relief they seek is high enough to support diversity jurisdiction, the ongoing debate over whether the amount in controversy in suits for declaratory or injunctive relief must be measured solely from the plaintiff's perspective or from the perspective of either party does not affect this case. *See, e.g.*, *Olden v. Lafarge Corp.*, 383 F.3d 495, 503 n.1 (6th Cir. 2004) (discussing the circuit split surrounding the question).

*v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) ("Where a party seeks a declaratory judgment, the amount in controversy is . . . the value of the consequences which may result from the litigation." (internal quotation marks and alterations omitted)); *Food Fair Stores v. Food Fair*, 177 F.2d 177, 184 (1st Cir. 1949) ("It is not accurate to say that a finding of amount in controversy cannot be based upon future or contingent damages.").

The plaintiffs estimate that those losses for EQT Production will far exceed the jurisdictional threshold, due to "delay in the production of natural gas" caused by the Webbs' interference with their pipeline. R. 1 ¶ 16. Although the complaint also suggests EQT Gathering will suffer some loss, the plaintiffs do not specify that amount. *Id.* ("[T]he Webbs' actions will interfere with EQT Production's and EQT Gathering's production and transportation of natural gas . . . ."); *id.* ¶ 19 ("EQT Production and EQT Gathering will suffer immediate and irreparable injury . . . ."). Regardless, for the reasons described below, the allegations regarding EQT Production's future losses are sufficient to support subject-matter jurisdiction over that company's claims. Supplemental jurisdiction over EQT Gathering's claims then follows under 28 U.S.C. § 1367(a).

Satisfying the amount in controversy requirement is not particularly onerous. True, the plaintiffs have the burden to demonstrate subject-matter jurisdiction, since they invoke the Court's power. *See Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). But that burden is not nearly as high as the Webbs suggest, because the Webbs mistakenly assume that the same standard applied at removal also applies here. For cases originally brought in federal court, like this one, a plaintiff's good faith assessment of his claim's value controls. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Therefore, the Court may dismiss this case for failure to meet the jurisdictional threshold

only if "it appears that the plaintiff's assertion of the amount in controversy was made in bad faith." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993) *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Put differently, dismissal based on the amount in controversy is improper unless it appears "to a legal certainty" that the plaintiff's claim does not meet the jurisdictional threshold. *St. Paul*, 303 U.S. at 289; *see also Rosen v. Chrysler Corp.*, 205 F.3d 918, 920–21 (6th Cir. 2000). This "legal certainty" or "good faith" test is a lower bar than the defendant's burden on removal to prove jurisdiction by a preponderance of the evidence, *see Gafford*, 997 F.2d at 158, and thus the Webbs' reliance on removal cases is misguided. Equitable claims also make no difference: the legal certainty test applies alike to actions for money damages and to suits for declaratory or injunctive relief. *See Hunt*, 432 U.S. at 348 (finding the jurisdictional minimum satisfied because the Court could not say "to a legal certainty" that the plaintiff's losses absent an injunction would be less than that amount); 14AA Charles Alan Wright, et al., Federal Practice and Procedure § 3708 (4th ed.) (explaining that in proceedings for injunctive and declaratory relief "the plaintiff's jurisdictional amount allegation . . . will be accepted unless it appears to a legal certainty that the amount cannot be recovered").

Here, the defendants have not demonstrated "to a legal certainty" that the value to EQT Production of declaratory or injunctive relief is $75,000 or less. Pointing out the lack of proof regarding the amount of escaping gas and future gas production, the Webbs raise general doubts about the size of EQT Production's potential losses. *See* R. 16 at 4, 7. But they offer no facts of their own contesting the plaintiffs' alleged expected losses, nor do they ever affirmatively deny that the value of an injunction to the plaintiffs exceeds the jurisdictional floor. This dooms the Webbs' argument. Generalized claims that the asserted

amount in controversy is unverified or unproven are not enough to show "to a legal certainty" that the value of relief is below the jurisdictional amount. *See EQT Gathering, LLC v. A Tract of Prop. Situated in Knott Cnty., Ky.*, No. 12-58-ART, 2012 WL 4321119, at *2 (E.D. Ky. Sept. 18, 2012). And unless the Webbs actually contest the plaintiffs' jurisdictional allegations, the Court is free to assess the amount in controversy based solely on the complaint, for absent a direct factual challenge the plaintiffs are not obligated to support their valuation with "competent proof." *See Stern v. Beer*, 200 F.2d 794, 795–96 (6th Cir. 1952) (citing *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 277–78 (1936)). The Court therefore accepts the plaintiffs' asserted future losses as true because there is no genuine factual dispute, and there is no sign that EQT Production's assertion was made in bad faith. *See Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("[W]here a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true."); *Fein v. Selective Serv. Sys. Local Bd. No. 7*, 430 F.2d 376, 384 (2d Cir. 1970) *aff'd on other grounds*, 405 U.S. 365 (1972) (holding that "[i]n the absence of bad faith or a legal certainty that the allegation is groundless, we must credit" the plaintiff's alleged losses without injunctive relief). As a result, the company's claims meet the jurisdictional threshold.

But what of EQT Gathering's claims? The plaintiffs suggest EQT Gathering will also suffer losses on account of the Webbs' continued obstruction, *see* R. 1 ¶ 16, but they do not offer an estimate of the company's potential harm without relief. No matter. Those claims are undoubtedly part of the same case or controversy under Article III because they "derive from a common nucleus of operative fact," and one would ordinarily expect them to be handled in the same judicial proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S.

715, 725 (1966). As a result, whatever the amount in controversy between EQT Gathering and the Webbs, the Court has supplemental jurisdiction over the company's claims pursuant to 28 U.S.C. § 1367(a). *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) (holding that where one plaintiff's claim satisfies the amount in controversy requirement, a district court under § 1367(a) may exercise supplemental jurisdiction over the jurisdictionally insufficient claims of another plaintiff, provided those claims are part of the same case or controversy). The Webbs' attack on subject-matter jurisdiction therefore fails, and as such there is no need to address their argument that the plaintiffs' claims cannot be aggregated for purposes of satisfying the amount in controversy requirement, *see* R. 11-1 at 2–3.

## II. The Plaintiffs' Claims Are Not Moot

But there is another jurisdictional defect, the Webbs say: the case is now moot because they have offered the plaintiffs the relief they seek. R. 16 at 13. According to a letter from the Webbs' counsel to the plaintiffs, the Webbs have agreed to give the companies "unfettered access for the relocation of the pipeline." R. 16-2 at 1. This offer, the Webbs claim, means there is no controversy left for the Court to adjudicate. R. 16 at 13. Although the defendants posed this argument for the first time in their reply brief, the Court may still consider the issue of mootness because it goes to jurisdiction. *See Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993). Notwithstanding the defendants' olive branch, the case remains live and justiciable. To be sure, the Webbs' offer fairly addresses some of the plaintiffs' requested relief, *see* R. 1 at 5, but the defendants cannot moot the case so easily.

First of all, even if the Webbs' mootness argument holds up, only a portion of the plaintiffs' claims would be moot. The defendants' offer does nothing, for example, to address the claim for an injunction prohibiting further misappropriation of the plaintiffs' gas. And the plaintiffs can still obtain a money judgment even though they did not explicitly request damages in their prayer for relief. *See* Fed. R. Civ. P. 54(c) (providing that aside from default judgments, "every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). As a result, there is plenty for the Court to decide besides the relief covered by the Webbs' letter.

More importantly, the Webbs' letter renders none of the plaintiffs' claims for injunctive or declaratory relief moot. Generally speaking, "voluntary cessation of allegedly illegal conduct . . . does not make the case moot." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953). Otherwise, the defendant could simply "return to his old ways." *Id.* This rule protects parties from opponents seeking to avoid judicial review by temporarily adjusting their behavior. *United States v. Detroit*, 401 F.3d 448, 451 n.1 (6th Cir. 2005); *see also Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) ("Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."). Proving the rare exception is no easy task: voluntary cessation only moots a claim for an injunction if the defendants can carry "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotation marks omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Because the defendants have made "no effort" to carry that

burden here, the entire controversy is still alive and kicking.  *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 857 (6th Cir. 2005).

### III.   The Webbs Have Not Shown That the Plaintiffs Fail to State a Claim

Even if the Court has jurisdiction, however, the Webbs contend the plaintiffs' case fails on the merits because their complaint does not adequately state a claim for relief.  The Webbs therefore move to dismiss pursuant to Rule 12(b)(6).[2]  To survive that motion, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Construing the complaint in the light most favorable to the plaintiff and accepting all well-pled allegations as true, the complaint must contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory."  *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (citation and internal quotation marks omitted).

The plaintiffs adequately state a claim for obstruction of their natural gas pipeline.  The Webbs generally object that the complaint fails to state a claim for illegal interference because they own surface rights pursuant to the Deed, *see* R. 11-1 at 4, but that cannot defeat the plaintiffs' claims for declaratory and injunctive relief.  In Kentucky, a mineral owner "has the right to use and occupy so much of the surface as may be necessary and reasonably convenient" to exercise his mineral rights, "even to the preclusion of any other surface

---

[2] The Webbs' reply brief is accompanied by affidavits, but the Court declines to convert their motion to dismiss to one for summary judgment because the parties have not had a reasonable opportunity for discovery. *See* Fed. R. Civ. P. 12(d) (providing that before a court may convert a Rule 12(b)(6) motion to a motion for summary judgment under Rule 56, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion"); *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (holding that district courts have "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion").

possession," unless the conveyance expressly provides otherwise. *Lindsey v. Wilson*, 332 S.W.2d 641, 642 (Ky. 1960); *see also Wiser Oil Co. v. Conley*, 346 S.W.2d 718, 722 (Ky. 1961). The Deed, moreover, expressly gives the plaintiffs broad rights to transport natural gas across the Webbs' property, *see* R. 1-1 at 1–2, and the Webbs do not dispute that this authorizes the plaintiffs' pipeline as it stands. The Webbs' surface rights alone are thus not enough to defeat the plaintiffs' claims.

The Webbs contend in reply, however, that the plaintiffs fail to state a claim because they do not allege that they are being deprived of reasonably necessary surface area, *see* R. 16 at 12–13, but this argument also misses the mark. A pipeline owner is entitled to injunctive relief against a surface-holder whose building atop the line unreasonably impedes its use, including necessary repairs. *See Higdon v. Kentucky Gas Transmission Corp.*, 448 S.W.2d 655, 656–58 (Ky. 1969); *Cent. Ky. Natural Gas Co. v. Huls*, 241 S.W.2d 986, 987 (Ky. 1951). Since the plaintiffs essentially allege that the Webbs' building has rendered the companies' pipeline unreasonably unsafe, *see* R. 1 ¶¶ 11, 13, the plaintiffs state a claim for injunctive and declaratory relief securing access to the Webbs' property to relocate the pipeline to a safe area.

Lastly, because the Webbs mischaracterize the plaintiffs' claim for an injunction barring them from appropriating gas from the pipeline, their motion to dismiss this claim is equally unpersuasive. As the Webbs describe the claim, the plaintiffs plead a violation of their allegedly exclusive rights under the Deed to produce and transport natural gas on the Webbs' property. *See* R. 11-1 at 5; R. 16 at 11. Those rights are not actually exclusive, the Webbs say, so the plaintiffs fail to state a claim. *Id.* But it is not competition that the plaintiffs find objectionable. On the contrary, they simply want to stop the Webbs from

illegally siphoning gas from the companies' pipeline: according to the complaint, the Webbs "without legal right or authorization" are "accessing or authorizing others to access natural gas for domestic use from a natural gas pipeline" on the property. R. 1 ¶10. To be fair, taken out of context, the use of the indefinite article—"*a* pipeline"—does create some superficial confusion regarding whether the plaintiffs object to the Webbs tapping *any* gas pipeline on their property without permission, or only *the plaintiffs'* pipeline. That confusion melts away, however, in light of the prayer for relief which demands an injunction regarding appropriation from "*the* natural gas pipeline" at issue in this case. R. 1 at 5 (emphasis added). As such, the fairest reading of the complaint is that the plaintiffs want the Webbs to stop consuming the companies' gas without permission. The Webbs, for that matter, even implicitly adopt this reading in a footnote. *See* R. 16 at 13 n.2.

Although the plaintiffs do not align their second injunction claim with a particular cause of action, at this stage it does not matter. The Court need not address the viability of any particular claim because whatever cause of action the plaintiffs have in mind, exclusivity is irrelevant to their theory, and the plaintiffs offer no other arguments for dismissal. The Webbs therefore have not shown why the plaintiffs fail to state a claim for an injunction against tapping their pipeline without permission.

## CONCLUSION

For the reasons described above, the defendants' motion to dismiss, R. 11, is

**DENIED**.

This the 17th day of April, 2014.

Signed By:

*__Amul R. Thapar__* AT

**United States District Judge**